# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| CEDRIC RAYNARD MCCLENDON | * | CIVIL ACTION NO.  11-0211 |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Cedric McClendon filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on October 21, 2008.  (Tr. 114-120).[1]  He alleged disability as of August 27, 2008,[2] because of an enlarged heart and kidney, gout,

---

[1]  McClendon filed prior applications on July 24, 2006, which were denied by an Administrative Law Judge ("ALJ") on August 27, 2008.  (Tr. 65-75).  He unsuccessfully appealed the ALJ's decision to the Appeals Council.  (Tr. 79-81).  There is no indication that he sought further review in district court.

[2]  At the administrative hearing herein, McClendon asked the ALJ to amend his alleged disability onset date to October 1, 2005.  (Tr. 47).  However, there is no indication that the ALJ accommodated McClendon's request, likely because he discerned no basis for reopening the Commissioner's final decision as to McClendon's prior applications which found him not disabled through August 27, 2008.

hypertension, depression, possible liver problems, bipolar disorder, and schizophrenia.  (Tr. 131, 144).  The claims were denied at the initial stage of the administrative process.  (Tr. 76-78, 82-85).  Thereafter, McClendon requested and received a December 14, 2009, hearing before an ALJ.  (Tr. 35-63).  However, in a January 12, 2010, written decision, the ALJ determined that McClendon was not disabled under the Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy.  (Tr. 18-31).

McClendon appealed the adverse decision to the Appeals Council.  On December 2, 2010; however, the Appeals Council denied his request for review; thus, the ALJ's latest decision became the final decision of the Commissioner.  (Tr. 1-3).

On February 7, 2011, McClendon sought review before this court.  He contends that the ALJ's determination that he is able to perform other work as a document preparer is not supported by substantial evidence, and had the ALJ properly interpreted the evidence, he would have been compelled to find plaintiff disabled.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

3

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

## I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that McClendon did not  engage in substantial gainful activity during the relevant period.  (Tr. 23).  At step two, he found that McClendon suffers severe impairments of gout, cardiomegaly with past history of myocardial infarction, hypertension, hepatomegaly, depressive disorder, and personality disorder with anti-social features.  (Tr. 23).  The ALJ concluded, however, that the impairments were not

4

severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart

P, Regulations No. 4, at step three of the process.  (Tr. 24).

## II.   <u>Residual Functional Capacity</u>

The ALJ determined that McClendon retained the residual functional capacity to perform

sedentary work,[3] except he can never climb ropes, ladders or scaffolds, but can occasionally

climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  (Tr. 25).  He occasionally needs

to use a cane for ambulation and should be allowed to alternate positions between sitting and

standing at will.  *Id*.  He also has marked limitations in the ability to understand, remember and

carry out detailed instructions, plus moderate limitations in his ability to:  maintain attention and

concentration for extended period, complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods, accept instructions and respond appropriately

to criticism from supervisors, get along with coworkers or peers without distracting them or

exhibiting behavioral extremes, and respond appropriately to changes in the work setting.  *Id*.

Plaintiff does not challenge the physical limitations of functioning credited by the ALJ in

his residual functional capacity assessment.[4]  Moreover, plaintiff does not appear to contest the

---

[3]   Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in
> carrying out job duties.  Jobs are sedentary if walking and standing
> are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[4]   There is substantial record evidence to support this facet of the ALJ's residual
functional capacity assessment.  *See* Tr. 226-229.

limitations of mental functioning recognized by the ALJ, which, as he concedes,[5] largely track the mental residual functional capacity assessment, SSA form 4734-F4-SUP, completed by non-examining agency psychologist, Cheryl Marsiglia, Ph.D.  (Tr. 381-384).  Instead, plaintiff takes issue with how the ALJ defined "moderate" in the hypotheticals that the ALJ posed to the vocational expert.  *See* Tr. 57.

Here, as in most other cases, the ALJ employed the definition of "moderate" that is set forth in the Medical Source Statement of Ability to do Work-Related Activities (Mental), Form HA-1152-U3 (06-2006):  "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily."  *Id*.  Plaintiff's counsel emphasizes that when SSA form 4734-F4-SUP is properly interpreted in accordance with the Program Operations Manual System and the regulations, it compels a definition of "moderate" that precludes the ability to perform all work.  However, this court has recently declined to adopt counsel's thesis.  *See Rey v. Astrue*, Civil Action No. 10-1847 (W.D. La.) (Jan. 10, 2012, R&R [doc. # 17]).  Instead, the court recognized that "moderate" as contemplated on SSA form 4734-F4-SUP will range in severity from benign to significant, depending upon the degree and extent of the capacity or limitation set forth in the narrative portion of the form.  *Id*.

In this case, Dr. Marsiglia explained in the narrative portion of form SSA-4734-F4-SUP that "[o]verall, [McClendon] appears to retain the ability to understand, remember and carry out simple directions, and adapt to changes in the workplace, and perform job tasks in a routine work setting with the limitations endorsed in section I."  (Tr. 390-391).  Clearly, Marsiglia did not think that McClendon's mental impairments were disabling *per se*.  Moreover, Marsiglia premised her assessment upon plaintiff's allegations, the medical record, and a February 17,

---

[5]  *See* Pl. Brief, pgs. 3-4, 6.

2009, mental status examination administered by Mark Dulle, Ph.D.  *Id.*  These records also substantially support the mild definition of "moderate" adopted by the ALJ.

For instance, on October 3, 2008, Ronald Schneider, M.D., a psychiatrist at the Veterans Administration, diagnosed McClendon with depression NOS, ETOH dependence in remission, cocaine, marijuana abuse, impulse control disorder NOS, and anti-social traits.  (Tr. 207-209). Schneider assigned a Global Assessment of Functioning ("GAF") score of 55,[6]  which denotes moderate symptoms.[7]  That same day, however, McClendon told his primary care physician that he did not suffer from depression, suicidal ideation or homicidal thoughts.  (Tr. 199).

Furthermore, pursuant to a February 17, 2009, consultative mental status examination, Mark Dulle, Ph.D., noted, *inter alia*, that McClendon appeared but mildly depressed.  (Tr. 381-384).  Also, McClendon's immediate memory remained minimally intact, and he worked at a moderate pace with good persistence, despite several errors.  *Id*.  Although McClendon confessed impatience with others and demonstrated weak social judgment, Dulle nonetheless opined that, psychologically, he was capable of functioning in an adequate manner within the workplace, on a sustained basis.  *Id*.

Dulle's benign conclusion is echoed by the consultative physician, Jacquelyn Ewing,

---

[6]  "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'"  *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

[7]  A GAF of 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.  While a GAF of 55 potentially contemplates an inability to keep a job, Dr. Schneider did not specify that McClendon was so limited.  Furthermore, plaintiff represented that he was never fired or laid off because of an inability to get along with other people.  (Tr. 141).

M.D., who opined that McClendon was capable of holding a conversation, responding appropriately to questions, and carrying out and remembering instructions. (Tr. 226-228).

In short, the record contains substantial evidence to support the ALJ's definition of "moderate," for the intertwined purposes of his mental residual functional capacity assessment and the hypotheticals that the ALJ posed to the vocational expert at step five of the sequential evaluation process. *See* discussion, *infra*. In addition, the Fifth Circuit has addressed this same issue previously, and approved the definition of "moderate" adopted by the ALJ herein. *See Giles v. Astrue*, 433 Fed. Appx. 241 (5th Cir. July 18, 2011) (unpubl.); *Cantrell v. McMahon*, 227 Fed. Appx. 321, 2007 WL 557567 (5th Cir. 2007) (unpubl.); *Beene v. McMahon*, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir. 2007) (unpubl.); and *Zills v. Barnhart*, 220 Fed. Appx. 289, 2007 WL 627605 (5th Cir. Feb. 27, 2007).

## III.    **Steps Four and Five**

The ALJ concluded at step four of the sequential evaluation process that McClendon could not perform his past relevant work. (Tr. 29). Accordingly, he proceeded to step five. At this step, the ALJ employed a vocational expert to determine that, given McClendon's vocational background and residual functional capacity, he was capable of making an adjustment to such representative occupations as document preparer that exist in substantial numbers in the national economy. (Tr. 30). In so doing, the ALJ posited hypotheticals to the vocational expert that faithfully incorporated all of the limitations recognized in his residual functional capacity assessment. *See Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994) (hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ). Moreover, the underlying residual functional capacity assessment, as defined by the ALJ, is supported by substantial evidence. *See* discussion, *supra*.

**Conclusion**

For the foregoing reasons, the undersigned finds that the Commissioner's decision that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 2nd day of February 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE